**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

DELIO MARMOL,

     Plaintiff,

v.                                                                                  Case No:  8:15-cv-1276-T-30TGW

ST. JUDE MEDICAL CENTER and
PACESETTER, INC.,

     Defendants.

_____/

## ORDER

THIS CAUSE comes before the Court upon Defendants' Motion to Dismiss First Amended Complaint (Doc. 10), Plaintiff's response in opposition (Doc. 12), and Defendants' reply (Doc. 15).[1]  The Court, having reviewed the motion, response, and reply, and being otherwise fully advised in the premises, concludes that Defendants' motion should be granted because Florida does not recognize private causes of action, like the products liability claims brought by Plaintiff, for violations of the Food and Drug Administration's ("FDA") regulations.  Plaintiff also has no remedy under federal law because the Medical Device Amendments Act of 1976 precludes Plaintiff from asserting a private cause of action to enforce violations of the Act.  While Plaintiff can petition the

---

[1]Defendants filed a notice of supplemental authority on August 12, 2015 (Doc. 16) citing *Leroy v. Medtronic, Inc.*, No. 3:14cv284/MCR/CJK, 2015 WL 4600880 (N.D. Fla. July 29, 2015), which the Court also considered in its analysis.

FDA to enforce its regulations, in Florida, Plaintiff currently lacks a judicial remedy to compensate him for the injuries he has sustained.

## BACKGROUND

Plaintiff commenced this products liability action against Defendants for injuries allegedly caused by defects in a model 1582 Riata lead[2] that was implanted in Plaintiff on January 5, 2009.[3] Defendants developed and manufactured the Riata lead, which is a Class III medical device approved by the FDA's premarket approval ("PMA") process. Plaintiff alleges that he began to sustain electrical shocks from his defibrillator unrelated to his condition in April 2012 and that he was thereafter informed by his doctor that his Riata lead had been recalled by the FDA due to failures associated with the lead insulation which could cause the leads to become externalized.[4] Although Plaintiff underwent surgery to have the Riata lead removed and replaced, his surgeon was unable to extract the Riata lead.

Plaintiff alleges that his Riata lead was defective in that it suffered from extrusion of the conductor, compromised lead insulation, increased lead impedance, and electrical abnormalities because Defendants failed to (1) manufacture the internal conductors at sizes

---

[2] The Riata lead is an implantable cardiac defibrillator lead, which is "a wire that delivers signals that allow an implantable cardiac defibrillator to detect an abnormal heart rhythm and deliver a shock to help the heart return to an appropriate rhythm." *In re Medtronic, Inc., Sprint Fidelis Leads Products Liab. Litig.*, 623 F.3d 1200, 1203 (8th Cir. 2010).

[3] Plaintiff filed his original complaint on May 1, 2015, in the Thirteenth Judicial Circuit in and for Hillsborough County, Florida. (Doc. 2). Defendants removed the action to this Court on May 26, 2015, and filed a motion to dismiss Plaintiff's complaint. (Docs. 1, 4). Plaintiff then filed an amended complaint (Doc. 7), which is the operative pleading for the purposes of Defendants' current motion to dismiss.

[4] In 2010, St. Jude Medical, Inc. published a "Dear Doctor" letter stating that the Riata leads were vulnerable to insulation abrasion at a rate of 0.47%. This insulation abrasion was associated with oversensing, undersensing, loss of capture, changes in pacing and high voltage lead impedances, and inability to deliver high-voltage therapy. A second "Dear Doctor" letter was later published advising that the insulation abrasion rate was actually 0.63%. The FDA classified the "Dear Doctor" letters as a Class 1 recall.

consistent with specifications, (2) manufacture the leads with uniform insulation diameters, (3) comply with the approved methods and specifications for curing and sterilization of the leads, (4) process the leads in the appropriate solution consistent with federal specifications, and (5) properly crimp the leads.  Plaintiff alleges that each of these manufacturing defects was inconsistent with Defendants' obligations under FDA regulations, the PMA documents, or both.  As a result of Defendants' noncompliance with federal specifications, the Riata leads were subject to abrasion of the insulation surrounding the leads' cables or conductors, which can cause the cables to protrude through the insulation and the leads to short producing unnecessary shocks and preventing the lead from properly communicating with the attached implantable cardiac defibrillator.

Accordingly, Plaintiff asserts claims under Florida law for (1) strict liability manufacturing defect, (2) negligent manufacturing defect, and (3) failure to warn. Defendants move to dismiss Plaintiff's complaint under Federal Rule of Civil Procedure 12(b)(6), raising numerous arguments, including that Plaintiff's complaint is inadequately pled and that the Medical Device Amendments of 1976 ("MDA") and Florida law preclude Plaintiff's claims.

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed for failure to state a claim upon which relief can be granted.  In considering a motion to dismiss under Rule 12(b)(6), a court must accept the factual allegations of the complaint as true and evaluate all inferences derived from those facts in the light most favorable to the plaintiff.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  Conclusory allegations,

unwarranted factual deductions, or legal conclusions masquerading as facts, however, are not entitled to the assumption of truth.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

## LEGAL FRAMEWORK

### A. The Medical Device Amendments of 1976

Currently, medical devices are regulated by the Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. §§ 301-399f.  States were once provided discretion to supervise new medical devices.  *See Stokes v. I-Flow Corp.*, No. 6:12-cv-991-Orl-36DAB, 2013 WL 1715427, at *2 (M.D. Fla. Apr. 8, 2013).  In 1976, however, Congress enacted the MDA, 21 U.S.C. § 360c, which amended the FDCA and "swept back some state obligations and imposed a regime of detailed federal oversight" for medical devices.  *Riegel v. Medtronic, Inc.*, 552 U.S. 312, 316 (2008).

Under the MDA, medical devices are divided into three classes based on the level of risk they pose to the public.  *See id.* at 316; 21 U.S.C. § 360c(a).  The degree of federal oversight depends on the class in which a given device falls.  *See Riegel*, 552 U.S. at 316-17.  The strictest regulations are imposed upon devices categorized as Class III, which include devices that support or sustain human life or present a potential unreasonable risk of illness or injury, such as replacement heart valves, implanted cerebella stimulators, and pacemaker pulse generators.  *Id.* at 317 (citing 21 U.S.C. § 360c(a)(1)(C)).

All Class III devices undergo the FDA's "rigorous" PMA process.  *Id.* (citing *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 477 (1996)).  The FDA grants PMA only if there is a "reasonable assurance" of the device's "safety and effectiveness."  21 U.S.C.

§ 360e(d)(1)(A).   After the FDA grants PMA, manufacturers may not change design specifications, manufacturing processes, labeling, or any other attribute that would affect safety or effectiveness without the FDA's permission.  *Riegel*, 522 U.S. at 319 (citing 21 U.S.C. § 360e(d)(6)(A)(i)).   If a manufacturer wishes to make a change to the device's design specifications, manufacturing process, labeling, or other attribute, it must submit an application for supplemental PMA, which undergoes the same rigorous evaluation as the initial PMA.  21 U.S.C. § 360e(d)(6); 21 C.F.R. § 814.39(c).

Following PMA, manufacturers must also comply with the FDA's current good manufacturing practices ("CGMPs") and quality system regulation ("QSR") which govern "the methods used in, and the facilities and controls used for, the design, manufacture, packaging, labeling, storage, installation, and servicing of all finished devices intended for human use."   21 C.F.R. § 820.1(a)(1).   The FDA also mandates certain reporting requirements after PMA, including alerting the FDA of new clinical investigations or scientific studies and reporting incidents where the device may have caused or contributed to death or serious injury.  21 C.F.R. §§ 814.84(b)(2), 803.50(a).

**B.  Preemptive Effect of the MDA**

The MDA contains an express preemption provision for medical devices, which provides:

> [N]o State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement—
>
> (1) which is different from, or in addition to, any requirement applicable under this chapter to the device, and

(2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter.

21 U.S.C. § 360k(a).  Thus, "'[t]he MDA expressly pre-empts only state requirements different from, or in addition to, any requirement applicable . . . to the device under federal law.'"  *Wolicki-Gables v. Arrow Int'l, Inc.*, 634 F.3d 1296, 1300 (11th Cir. 2011) (quoting *Riegel*, 552 U.S. at 321).

In *Riegel v. Medtronic, Inc.*, the Supreme Court examined whether the MDA preempted state-law claims regarding an allegedly defective medical device.  In doing so, the Supreme Court set forth a two-part test to determine whether the state-law claim was preempted.  Namely, the Court held that preemption under § 360k(a) applies if (1) the federal government established requirements applicable to the medical device in question, and (2) the state-law claims concerning the device are based on requirements that are "different from, or in addition to" the federal requirements and relate to the safety and effectiveness of the device.  *Riegel*, 522 U.S. at 321-22.  The first prong is automatically satisfied if the FDA authorizes commercial distribution of a Class III medical device following the PMA process.  *Id.* at 322-23.

The Supreme Court clarified that preemption under § 360k(a) is not absolute and "does not prevent a State from providing a damages remedy for claims premised on a violation of the FDA regulations . . . [because] the state duties in such a case 'parallel,' rather than add to, federal requirements."  *Id.* at 330.  In *Wolicki-Gables v. Arrow International, Inc.*, the Eleventh circuit explained:

> "In order for a state requirement to be parallel to a federal requirement, and thus not expressly preempted under § 360k(a), the plaintiff must show that

>the requirements are "genuinely equivalent."  State and federal requirements are not genuinely equivalent if a manufacturer could be held liable under the state law without having violated the federal law."

634 F.3d at 1300 (quoting *McMullen v. Medtronic, Inc.*, 421 F.3d 482, 489 (7th Cir. 2005)).

Additionally, the parallel claim must arise from an actual state-law requirement and cannot exist "solely by virtue of the FDCA . . . requirements." *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 353 (2001).  This is so because, in addition to express preemption articulated under § 360k(a), the FDCA includes an implicit preemption provision requiring that any action "for the enforcement, or to restrain violations" of the FDCA be brought "by and in the name of the United States."  21 U.S.C. § 337(a).  Although "citizens may report wrongdoing and petition the [FDA] to take action," there is no private right of action under the FDCA.  *Buckman*, 531 U.S. at 349.

Express preemption and implied preemption provide a "narrow gap" through which a plaintiff's claims must fit in order to survive.  In other words, a plaintiff "'must be suing for conduct that *violates* the FDCA (or else his claim is expressly preempted by § 360k(a)), but the plaintiff must not be suing *because* the conduct violates the FDCA (such a claim would be impliedly preempted under *Buckman*).'"  *In re Medtronic*, 623 F.3d at 1204 (quoting *Riley v. Cordis Corp.*, 625 F. Supp. 2d 769, 777 (D. Minn. 2009)).  Considered together, § 337(a) and § 360k(a) preempt "nearly all types of claims concerning FDA-approved medical devices."  *In re Medtronic, Inc., Sprint Fidelis Leads Products Liab. Litig.*, 592 F. Supp. 2d 1147, 1161 (D. Minn. 2009).

**C.  Judicial Notice of Relevant FDA Public Records**

As a preliminary matter, Defendants request that the Court take judicial notice of

both the existence and contents of the PMA documents available as public records on the

FDA's website.  (Doc. 10 at 8, 16).  The parties do not dispute the general principle that

the Court may take judicial notice of public records available on the FDA's website.

Rather, Plaintiff contends that the Court's notice may only extend to the *existence* of the

PMA documents and not their *contents*.  (Doc. 12 at 15-17).

Federal Rule of Evidence 201 provides that a court may, when requested by a party

who supplies "the necessary information," take judicial notice of an adjudicative fact if it

"can be accurately and readily determined from sources whose accuracy cannot reasonably

be questioned."  Fed. R. Evid. 201(b)-(c).  Courts in this circuit have routinely taken

judicial notice of public records available on the FDA's website, without converting a

motion to dismiss into a motion for summary judgment, because such documents satisfy

the requirements of Rule 201.  *See Kaiser v. DePuy Spine, Inc.*, 944 F. Supp. 2d 1187, 1192

n.2 (M.D. Fla. 2013) (taking judicial notice of "public records of the FDA relating to the

medical device involved in the case"); *McClelland v. Medtronic, Inc.*, No. 6:11-cv-1444-

Orl-36KRS, 2012 WL 5077401, at *2 (M.D. Fla. Sept. 27, 2012) (taking judicial notice of

"public records of the FDA" attached to briefing concerning a motion to dismiss based on

preemption); *Rounds v. Genzyme Corp.,* No. 8:10-cv-2479-T-23TBM, 2010 WL 5297180,

at *1 (M.D. Fla. Dec. 20, 2010) (holding that "the FDA's public records and statements

about [a medical device] merit judicial notice").  No question exists therefore that the fact

of the existence of the PMA documents reflecting that the model 1582 Riata leads

successfully cleared the PMA hurdle is appropriate for judicial notice

Although judicial notice of the existence of the PMA documents is appropriate,

considering the nature and limited extent of the information available on the FDA's

website, the Court concludes that judicial notice of the contents of the PMA documents is

not appropriate at this time.  *See Rosen v. St. Jude Med. Inc.*, 41 F. Supp. 3d 170, 182 n.10

(N.D.N.Y. 2014) (concluding that judicial notice of the existence of PMA documents was

appropriate at the motion to dismiss stage but judicial notice of the contents was not);

*Bausch v. Stryker Corp.*, 630 F.3d 546, 560 (7th Cir. 2010) (noting that FDA regulations

keep many of the specifications considered in the PMA process confidential and that they

are not readily available to the public (citing 21 C.F.R. § 814.9)).

## DISCUSSION

### A. Strict Liability and Negligent Manufacturing Defect (Counts I & II)

**1.  Whether Plaintiff has failed to state a prima facie claim of manufacturing defect.**

Defendants contend that Plaintiff has not satisfied the requirements of Federal Rule

of Civil Procedure 8 because Plaintiff failed to state a plausible claim for a manufacturing

defect under either a theory of strict liability or negligence (collectively the

"manufacturing-defect claims").  In the Eleventh Circuit, to state a prima facie claim of

manufacturing defect with regard to a PMA-approved device, Plaintiff must allege that (1)

the device suffered from a defect; (2) the defect resulted from a violation of a particular

PMA requirement; and (3) the defect caused his injury.  *Lederman v. Howmedica*

*Osteonics, Corp.*, 950 F. Supp. 2d 1246, 1250-51 (M.D. Fla. 2013) (citing *Wolicki-Gables*, 634 F.3d at 1301-02).

Defendants argue that Plaintiff's manufacturing defect claims are deficient because Plaintiff failed to allege facts that (1) plausibly suggest his Riata lead suffered from a defect, (2) any defect was the result of deviation from a PMA requirement, and (3) the alleged defect caused Plaintiff's injuries. (Doc. 10 at 11). In support of their arguments, Defendants rely on several cases in which the plaintiffs failed to plead sufficient facts to survive a motion to dismiss. (*See* Doc. 10 at 12 (citing *Riley*, 625 F. Supp. 2d at 789; *Funk v. Stryker Corp.*, 631 F.3d 777, 782 (5th Cir. 2011); *Maness v. Boston Scientific*, 751 F. Supp. 2d 962, 970-71 (E.D. Tenn. 2010); *Frey v. Novartis Pharm. Corp.*, 642 F. Supp. 2d 787, 795 (S.D. Ohio 2009)).

Plaintiff's allegations are markedly different from the bare-boned, conclusory allegations at issue in the cases on which Defendants rely. In his complaint, Plaintiff alleged that the Riata leads generally suffered from manufacturing defects related to Defendants' noncompliance with particular specifications arising from either the PMA documents or federal regulations. Plaintiff also alleged facts showing a causal connection between those defects, violations of applicable federal regulations, and his injuries. Plaintiff's complaint is detailed and contains neither formulaic recitations of the elements nor conclusory allegations. Thus, contrary to Defendants' assertions, Plaintiff has stated plausible claims for strict liability or negligent manufacturing defect sufficient to satisfy Rule 8 at this stage of the proceedings. *See Rosen*, 41 F. Supp. 3d at 182-83 (upholding as sufficiently pled claims for manufacturing defects on allegations practically identical to

Plaintiff's); *O'Neil v. St. Jude Med., Inc.*, No. C13-0661RSL, 2013 WL 6173803, at *2 (W.D. Wash. Nov. 22, 2013) (concluding that claims almost identical to Plaintiff's were sufficiently pled).

### 2. Whether Plaintiff's manufacturing-defect claims are expressly preempted under the MDA.

Next, Defendants contend that Plaintiff's manufacturing defect claims are expressly preempted under § 360k(a). (Doc. 10 at 12-19). In determining whether Plaintiff's claims are expressly preempted under the MDA, the Court must decide: (1) whether the federal government established requirements applicable to the Riata leads; and (2) whether Plaintiff's state-law claims are based on requirements that are "different from, or in addition to" the federal requirements and relate to the safety and effectiveness of the device. *Riegel*, 552 U.S. at 321-22. Here, the parties agree that the first prong is satisfied because the Riata lead was approved through the PMA process. Rather, at issue, is whether Plaintiff's claims are based on requirements that are "different from, or in addition to" the requirements imposed by the FDA.

Plaintiff asserts that his manufacturing-defect claims do not impose state requirements "different from, or in addition to" the federal requirements. Instead, he argues that his state-law claims fall within the narrowly circumscribed exception for preempted claims in that the state-law requirements parallel the federal requirements. (Doc. 12 at 12-13). Defendants counter that Plaintiff has not established a parallel claim because the federal requirements on which Plaintiff bases his state-law claims do not exist in the PMA documents. (Doc. 10 at 16-17). Thus, according to Defendant, deviation from

these requirements cannot form the basis of viable, parallel claim that survives preemption.

Plaintiff responds that at least some of the federal requirements Defendants violated may

be contained in either the PMA documents or federal regulations.  (Doc. 12 at 13-15).

Under *Wolicki-Gables*, "for a state requirement to be parallel to a federal

requirement, and thus not expressly preempted under § 360k(a), the plaintiff must show

that the requirements are '*genuinely* equivalent.'"  634 F.3d at 1300 (quoting *McMullen*,

421 F.3d at 489).  To allege a "genuinely equivalent" parallel claim:

> Plaintiffs cannot simply incant the magic words "[Defendants] violated FDA
> regulations" in order to avoid preemption.  Parallel claims must be
> specifically stated in the initial pleadings.  A plaintiff must allege that [the]
> defendant violated a particular federal specification referring to the device at
> issue.  To properly allege parallel claims, the complaint must set forth facts
> pointing to specific PMA requirements that have been violated.
>
> . . . .
>
> The[ ] allegations [must] set forth [a] specific problem, or failure to comply
> with any FDA regulation that can be linked to the injury alleged.

*Id.* at 1301-02 (internal citations and quotation marks omitted).  In other words, a plaintiff

must "identify [a] particular specification or specific PMA requirement or FDA regulation

that [d]efendant violated" regarding the plaintiff's medical device and that caused the

plaintiff's injury.  *Kaiser*, 944 F. Supp. 2d at 1191-92.

To the extent Defendants contend that the PMA documents do not contain the

specifications on which Plaintiff relies, the Court declines to entertain this argument on a

motion to dismiss since it concluded that judicial notice of the contents of the PMA

documents was inappropriate at this stage of the proceedings.  However, in his response,

Plaintiff does not dispute Defendants' assertion that the specifications on which he relies

are not contained within the PMA documents.   Instead, Plaintiff argues that, under

§ 360k(a), violation of *any* federal requirement, which includes, not only the requirements

contained within the device-specific PMA documents, but also requirements mandated by

the generally-applicable CGMPs and QSR, can provide a basis for stating a parallel claim

that survives preemption.   (Doc. 12 at 13-14).   Plaintiff essentially concedes that the

specifications he cites in his complaint may not be contained in the PMA documents and

clarifies that his manufacturing-defect claims are based upon specifications contained in

either the PMA documents or mandated by other federal regulations.  (*Id.* at 15).

The Eleventh Circuit has not considered whether a parallel claim may be premised

upon violations of federal regulations beyond the PMA specifications.[5]   The Court

recognizes that some persuasive authority exists for Plaintiff's assertion that a parallel

claim can be based upon a manufacturer's deviation from either PMA specifications or

other federal regulations like the CGMPs.  *See Rosen*, 41 F. Supp. 3d at 181 (concluding

that factually-sufficient allegations that a defendant violated either the PMA or CGMPs

satisfies a plaintiff's obligation to state a parallel claim and avoid preemption under

§ 360k(a)); *Cline v. Advanced Neuromodulation Sys., Inc.*, 17 F. Supp. 3d 1275, 1284-85

(N.D. Ga. 2014) (concluding that, under the circumstances of that case, the plaintiff stated

a sufficient parallel claim for negligent manufacturing based on the defendant's alleged

---

[5]Defendants emphasize that *Wolicki-Gables* precludes parallel claims based on noncompliance with general federal regulations because it provides that a "complaint must set forth facts pointing to *specific PMA requirement*s." (Doc. 15 at 4 (citing *Wolicki-Gables*, 634 F.2d at 1301)).  But *Wolicki-Gables* did not directly address whether a parallel claim could be premised upon noncompliance with a general federal regulation, such as the CGMPs.  At most, the Eleventh's Circuit's heavy reliance on *Ilarraza v. Medtronic, Inc.*, 677 F. Supp. 2d 582, 583, 586 (E.D.N.Y. 2009), indicates that the Eleventh Circuit *might* find parallel claims based on noncompliance with CGMPs precluded.

violation of a CGMP); *but see Horn v. Boston Scientific Neuromodulation Corp.*, No. CV409-074, 2011 WL 3893812, at *8-9 (S.D. Ga. 2011) (citing *Ilarraza*, 677 F. Supp. 2d at 583, 586) (noting that the CGMPs did not serve as a basis to assert a parallel claim because they are not device-specific and are too broad); *In re Medtronic*, 592 F. Supp. 2d at 1157 (concluding that claims based on violations of the CGMPs are too generic and flexible to serve as the basis for a manufacturing-defect claim).  Nevertheless, the Court need not address this issue as Plaintiff's manufacturing-defect claims do not survive under Florida law.

      **3.   Whether Plaintiff's manufacturing-defect claims are barred under Florida law.**

Even if Plaintiff could properly allege a sufficient, parallel claim based on violations of the PMA specifications or federal regulations, Florida law does not permit a private action to enforce violations of FDA requirements.  Indeed, every court in this circuit to have directly addressed this issue has "consistently held that private actions . . . that seek to enforce violations of FDA regulations [including PMA requirements] are barred because Florida does not recognize such causes of action." *Kaiser*, 944 F. Supp. 2d at 1192; *see also Jackson v. St. Jude Med. Neuromodulation Div.*, No. 2:14-cv-717-FtM-38DNF, 2015 WL 1456650, at *7 (M.D. Fla. Mar. 30, 2015); *Byrnes v. Small*, 60 F. Supp. 3d at 1297; *Brown v. DePuy Orthopaedics, Inc.*, 978 F. Supp. 2d 1266, 1275 (M.D. Fla. 2013); *McClelland*, 2012 WL 5077401, at *6; *Wheeler v. DePuy Spine, Inc.*, 706 F. Supp. 2d 1264, 1268, 1269-70 (S.D. Fla. 2010).  The Court cannot find, and Plaintiff has not identified, any Florida law that would indicate otherwise.  Because Florida does not

recognize a private cause of action to enforce FDA requirements, Plaintiff's manufacturing-defect claims fail and should be dismissed.[6]

## B. Failure to Warn (Count III)

Finally, Defendants assert that Plaintiff's claim for failure to warn is both explicitly and implicitly preempted, and like his manufacturing-defect claims, not recognized under Florida law. (Doc. 10 at 19-22). In asserting his claim for failure to warn, Plaintiff alleges that Defendants have a continuing duty to monitor the safety and effectiveness of the Riata leads and report complaints about product performance and any health consequences to the FDA and to provide ongoing warnings and instructions regarding safety hazards associated with the Riata leads. (Doc. 7 at 27). Plaintiff asserts that Defendants breached this duty because they failed to provide timely and adequate post-PMA reports regarding safety hazards and potential defects to the FDA. (*Id.*).

According to Plaintiff, if Defendants complied with the FDA's reporting requirements, the risks associated with the Riata leads would have reached Plaintiff's treating physicians in time to prevent or reduce Plaintiff's injuries. (*Id.* at 28). Plaintiff clarifies that his failure-to-warn claim is limited to the reporting requirements imposed by the FDA.[7] (Doc. 12 at 18). To the extent Plaintiff's failure-to-warn claim is premised upon Defendants' alleged failure to comply with FDA reporting requirements, Defendants argue that Plaintiff's claim is impliedly preempted under the MDA because Plaintiff has failed to

---

[6]Because Plaintiff's claims are not permitted under Florida law and there is no private right of action under the FDCA, Plaintiff's manufacturing-defect claims are also impliedly preempted. *See Buckman*, 531 U.S. at 352-53.

[7]Plaintiff's clarification renders Defendants' express-preemption argument moot.

identify a state-law duty that requires submission of such reports to the FDA and therefore

Plaintiff's claim is simply an attempt to recast a claim for violation of the FDCA as a

state-law negligence claim.  (Doc. 10 at 20-22).  The Court agrees.

Under Florida law, the duty to warn requires a manufacturer to adequately warn

consumers of "a particular risk that was known or knowable in light of the generally

recognized and prevailing best scientific and medical knowledge available at the time of

manufacture and distribution." *Marzullo v. Crossman Corp.*, 289 F. Supp. 2d 1337, 1347

(M.D. Fla. 2003) (citing *Ferayorni v. Hyundai Motor Corp.*, 711 So.2d 1167, 1172 (Fla.

4th DCA 1998), *rev'd on other grounds*, 822 So. 2d 502 (Fla. 2002)).  In the context of

medical devices, Florida applies the so-called "learned intermediary doctrine" which

provides that the duty to warn attaches to a patient's physician rather than to the patient

directly.  *See Ocasio v. C.R. Bard, Inc.*, No. 8:15-cv-1962-T-36AEP, 2015 WL 3496062,

at *4 (M.D. Fla. June 3, 2015).  Thus, Florida recognizes a duty to warn the user or

consumer of the product and, in the case of medical devices, a physician.

On the other hand, the MDA requires manufacturers to provide reports of adverse

events associated with a medical device to the *FDA*; and the information contained in these

reports may or may not reach physicians.[8]  Plaintiff has not identified a duty under Florida

---

[8]After a device is approved through the PMA process, a manufacturer must make Medical Device
Reporting ("MDR") submissions to the FDA.  21 C.F.R. § 803.50(a).  Specifically, the regulations require
a manufacturer to report to the FDA within thirty days "information . . . that reasonably suggests that a
device . . . (1) [m]ay have caused or contributed to a death or serious injury or (2) [h]as malfunctioned and
this device or a similar device . . . would be likely to cause or contribute to a death or serious injury, if the
malfunction were to recur."  *Id.*; *see also* § 360i(a)(1) (requiring the adoption of regulations that direct a
manufacturer to report information regarding the dangers associated with a device).  Based on these reports,
the FDA has the authority to withdraw PMA.  *Riegel*, 552 U.S. at 319-20.  Any reports submitted by a
manufacturer to the FDA "may" be disclosed to the public and the submission of an MDR "is not necessarily

law that requires a manufacturer to warn an agency, such as the FDA, of potential dangers

associated with a medical device.

Because Plaintiff's failure-to-warn claim is premised upon an FDA-reporting

requirement that is not paralleled by a Florida-law duty, Plaintiff's claim is impliedly

preempted. *See Byrnes*, 60 F. Supp. 3d at 1297 (finding the plaintiffs' claim for failure to

warn impliedly preempted because the plaintiffs did not identify a parallel duty under

Florida law to provide adequate warnings to the FDA).  Federal law does not provide a

private right of action for failure to comply with FDA requirements.  *Buckman*, 531 U.S.

at 349.  Since Florida does not provide a duty to file such reports with the FDA, Plaintiff's

claim is merely an "attempt to recast a claim for violation of the FDCA as a state-law

negligence claim." *McClelland v. Medtronic, Inc.*, 944 F. Supp. 2d 1193, 1200-01 (M.D.

Fla. 2013); *see also In re Medtronic*, 592 F. Supp. 2d at 1160-61 (granting a motion to

dismiss in favor of the defendant and stating that "what Plaintiffs are really alleging is that

[the defendant] violated the FDCA by failing to inform the FDA in a timely fashion of

adverse . . . events.  Such a claim necessarily fails, because no private right of action exists

under the FDCA.  Plaintiffs cannot make an end run around this rule by recasting violations

of the FDCA as violations of state common law" (citations omitted)).

To the extent that Plaintiff relies on *Hughes v. Boston Scientific Corp.*, 631 F.3d

762, 769 (5th Cir. 2011), and *Stengel v. Medtronic, Inc.*, 704 F.3d 1224, 1233 (9th Cir.

---

an admission that the device . . . caused or contributed to the reportable event."  21 C.F.R. §§ 803.9(a),
803.16.

2013) (en banc), the Court is unpersuaded.  Those cases consider the laws of Mississippi

and Arizona, respectively; but the inquiry, by its very nature, is dependent upon

state-specific law.   For example, in *Stengel* the Ninth Circuit concluded that a

failure-to-warn claim asserted under Arizona law was not impliedly preempted because the

Arizona "state-law claim [was] independent of the FDA's pre-market approval process . .

. [and] rest[ed] on a state-law duty that parallels a federal-law duty under the MDA."

*Stengel*, 704 F.3d at 1233.  In reaching this conclusion, the court noted that Arizona law

permitted a cause of action for failure to warn based on the failure to warn a third-party,

such as the FDA, if the information would ultimately reach those whose safety depends on

the warning.  *Id.*

Plaintiff has not provided the Court with any *Florida* law which recognizes a duty

to warn an agency such as the FDA.  Thus, the holdings in *Stengel* and *Hughes* are

inapplicable to the present case.  Furthermore, each court in this circuit that has addressed

the viability of a failure-to-warn claim in relation to a medical device governed by the PMA

process, has determined that the claim is impliedly preempted because Florida law lacks a

parallel duty to file adverse reports with the FDA.  *See Jackson*, 2015 WL 1456650, at *7

(recognizing that Florida does not permit private actions to enforce FDA regulations); *see

also Byrnes*, 60 F. Supp. 3d at 1297; *Brown*, 978 F. Supp. 2d at 1275; *Kaiser*, 944 F. Supp.

2d at 1192; *McClelland*, 2012 WL 5077401, at *6; *Wheeler v. DePuy Spine, Inc.*, 706 F.

Supp. 2d 1264 at 1269 n.4.  Consequently, Plaintiff's failure-to-warn claim is precluded

under Florida law, and therefore, impliedly preempted under the FDCA.

## CONCLUSION

Because Plaintiff's manufacturing-defect claims and failure-to-warn claim based on violations of FDA regulations are not recognized under Florida law, Plaintiff's amended complaint is dismissed.  Plaintiff has requested leave to file a second amended complaint. Defendant asserts that any such leave would be futile and should not be permitted.  In an abundance of caution, the Court will permit Plaintiff a final opportunity to amend his complaint provided he can do so in accordance with his obligations under Federal Rule of Civil Procedure 11.

Accordingly, it is therefore **ORDERED AND ADJUDGED** that:

1.   Defendants' Motion to Dismiss First Amended Complaint (Doc. 10) is GRANTED.

2.   Plaintiff's Amended Complaint (Doc. 7) is DISMISSED WITHOUT PREJUDICE.

3.   Within fourteen (14) days of the date of this Order, Plaintiff may file a second amended complaint if he can do so in good faith consistent with his Rule 11 obligations.

4.   If Plaintiff does not file a second amended complaint within the time provided, this case will be closed without further notice.

**DONE** and **ORDERED** in Tampa, Florida, this 24th day of September, 2015.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record

19